NORTH CAROLINA JOINT STOCK LAND BANK OF DURHAM, AND W. L. TOTTEN, ASSIGNEE, v. R. E. BLAND AND WIFE, LOUISA BLAND, AND F. B. BLAND.

(Filed 2 November, 1949.)

**1. Waiver § 2—**

A waiver is simply an intentional relinquishment of a known right.

**2. Homestead § 8—**

A written request by judgment debtors to the sheriff to sell lands under execution without the allotment of homestead to the end that the property might bring the highest price possible, and the joinder of the judgment debtors in the sheriff's deed to the purchaser, constitute an authorization and ratification of the act of the sheriff in making the execution sale without allotment of homestead and is a valid waiver by the judgment debtors of their homestead exemption in regard to that particular execution.

**3. Same—**

Homestead is a right created for the benefit of the judgment debtor, and therefore other judgment creditors cannot complain of a waiver by the debtor of this right in designated realty as to a particular judgment. N. C. Constitution, Art. X, sec. 2.

**4. Execution § 16—**

Where the judgment debtor waives his homestead in specific realty as to a particular judgment, the sheriff may sell the lands under execution without allotting homestead.

**5. Same—**

Where it is not made to appear that the judgment debtors possessed personalty, attack of the sale on the ground that the sheriff failed to satisfy the judgment out of the personalty is untenable, since it will be presumed that the sheriff levied on realty because he could not find any personalty. G.S. 1-313 (1).

**6. Same: Execution § 23½—**

The requirement that the personalty of the judgment debtor be first exhausted before sale of his realty under execution is for the benefit of the judgment debtor and other judgment creditors may not attack the execution sale on the ground that this was not done.

**7. Execution § 16—**

A judgment debtor waives his right to have his personalty first exhausted before sale of his realty under execution by requesting the sheriff to levy upon the realty, or by failing to disclose his personalty when the sheriff is about to make a levy.

**8. Same—**

Upon the expiration of ten days after the sale during which the sale is held open for receipt of an advance bid, the right of the purchaser to deed becomes absolute, and when this right vests within ninety days after the issuance of execution the validity of the sale is not affected by delay of the sheriff in making formal return or in executing deed to the purchaser. G.S. 45-28, G.S. 1-310.

**9. Execution § 22—**

The sheriff's deed to the purchaser at an execution sale relates back to the sale and operates to pass title as of that time.

**10. Deeds § 2a (1)—**

Where the owners of land join in as grantors in the sheriff's deed to the purchaser at execution sale, the deed passes their title to the purchaser independently of any acts or participation by the sheriff under the execution sale, subject to the lien of any other judgments against them.

**11. Judgments § 23—**

Where a judgment rendered in another county is docketed in the county in which the judgment debtor owns realty, the lien of the judgment expires at the end of ten years from the date of the rendition of the judgment and not the date of docketing.    G.S. 1-234, G.S. 1-306.

**12. Same: Judgments § 22a—**

An action on a judgment does not extend the lien of the original judgment and the new judgment does not become a lien on the realty until docketed in the county wherein the land is situate, and therefore where the judgment debtors have conveyed the property prior to the docketing of the new judgment, their grantees take the land free from the lien of the original judgment after the expiration of ten years from the date the original judgment was rendered.

APPEAL by plaintiff, W. L. Totten, from *Frizzelle, J.,* at the June Term, 1949, of LENOIR.

The facts resulting in this litigation have been established by the written stipulation of the parties.   They are summarized below.

1. On 8 March, 1927, the Superior Court of Lenoir County entered judgment in favor of Jesse Wallace and against R. E. Bland and his wife, Louisa Bland, for $3,843.75 with certain interest and costs.   This judgment was immediately docketed on the judgment docket of the court in which it was rendered.   On December 19, 1930, it was assigned to F. B. Bland, the son of R. E. Bland and Louisa Bland.

2. On 2 October, 1933, the Superior Court of Durham County rendered judgment in favor of the North Carolina Joint Stock Land Bank of Durham and against R. E. Bland and his wife, Louisa Bland, for $4,124.04 with certain interest and costs. This judgment was docketed on the judgment docket of the Superior Court of Lenoir County on 11 October, 1933. Afterwards, to wit, on 3 November, 1942, this judgment was assigned to W. L. Totten.

3. Meanwhile, to wit, on 10 June, 1936, an execution was issued upon the Jesse Wallace judgment and placed in the hands of the Sheriff of Lenoir County, who forthwith levied the same upon 29 acres of land situated on the Neuse River in Lenoir County and owned by R. E. Bland and his wife, Louisa Bland. This levy was made at the instance of the owners, who requested the Sheriff in writing to sell such land under the execution without any allotment of any homestead to them "to the end that the full value of said lands may be realized at the sale" and who assured the Sheriff in writing that they would join in the Sheriff's deed to the purchaser at the execution sale "to the end that the complete title, including their homestead rights, may be conveyed to the purchaser." Pursuant to this request and assurance, the Sheriff did not cause any homestead to be set apart to the judgment debtors. After an advertisement conforming to G.S. 1-325 and notifying prospective bidders of the terms of the request and assurance of the judgment debtors, the sheriff sold the 29 acres under the execution at public outcry to F. B. Bland, the last and highest bidder, for $1,750.00 in cash at the courthouse door of Lenoir County on the first day of the regular August Term of the Superior Court of Lenoir County, i.e., on Monday, 24 August, 1936. The sale was forthwith reported to the Clerk of the Superior Court of Lenoir County, and was held open for ten days for the receipt of advanced bids. This period expired without the bid being increased.

4. On 3 October, 1936, the Sheriff of Lenoir County and R. E. Bland and his wife, Louisa Bland, as parties of the first part, signed, sealed, acknowledged, and delivered to F. B. Bland, as party of the second part, a deed dated 9 September, 1936, in the form customarily employed by sheriffs making sales of realty under executions. After prefatory recitals of all the details of the execution sale and of the fact that it had been made by the Sheriff without any allotment of homestead pursuant to the written request of the judgment debtors "to the end that the land might be sold for the highest possible price and to the end that the purchaser at said execution sale would acquire a full and complete title to said land freed from all homestead rights of said judgment debtors," the deed acknowledged the receipt of the sale price by the Sheriff and specified that "the parties of the first part" conveyed the 29 acres of land "with all privileges and appurtenances thereunto belonging" to F. B. Bland

"and his legal representatives in as full and ample manner as the said first parties are authorized and empowered to convey the same." On the date of the execution of the deed, *i.e.,* on 3 October, 1936, the Sheriff made formal return to the execution to the Superior Court of Lenoir County, and nine days later, *i.e.,* on 12 October, 1936, the deed was recorded in the office of the Register of Deeds of Lenoir County.

5. The North Carolina Joint Stock Land Bank of Durham and W. L. Totten had no actual knowledge of the execution sale and the ensuing deed until the latter part of the year 1942.

6. On 2 September, 1943, the North Carolina Joint Stock Land Bank of Durham and W. L. Totten sued R. E. Bland and his wife, Louisa Bland, on the judgment of 2 October, 1933, in the Superior Court of Durham County, and on 15 November, 1943, the Superior Court of Durham County rendered judgment in such action in favor of the North Carolina Joint Stock Land Bank and W. L. Totten and against R. E. Bland and his wife, Louisa Bland, for $4,124.04 with certain interest and costs. This judgment was forthwith docketed on the judgment docket of the Superior Court of Lenoir County. On 2 September, 1943, the North Carolina Joint Stock Land Bank of Durham had no interest whatever in the original judgment of 2 October, 1933, upon which the new judgment was entered, and it has no interest in such judgment now.

The stipulation of facts does not reveal whether the judgment debtors possessed any personal property at the time of the levy and sale.

The North Carolina Joint Stock Land Bank of Durham and W. L. Totten brought the present action against R. E. Bland and his wife, Louisa Bland, and F. B. Bland, in the Superior Court of Lenoir County on 31 December, 1943, for the avowed purpose of obtaining a judgment setting aside the execution sale and the ensuing deed to F. B. Bland and ordering a sale of the 29 acres by a commissioner for the satisfaction of "the plaintiffs' judgment."

When the cause was heard upon the facts stipulated by the parties, the court reached the conclusions adverted to in the opinion and rendered judgment that the deed from the Sheriff, and R. E. Bland and Louisa Bland to F. B. Bland "is good and sufficient and conveyed the title to the lands therein described" to F. B. Bland. The plaintiff, W. L. Totten, excepted and appealed, assigning errors.

*S. J. Bennett and R. M. Gantt for the plaintiff, W. L. Totten, appellant.*

*Allen, Allen & LaRoque and John G. Dawson for the defendants, appellees.*

ERVIN, J.  The first objection of appellant to the judgment is founded on the theory that the execution sale and the ensuing deed are void because "the Sheriff failed to allot the homestead to R. E. Bland and his wife, Louisa Bland." This assumption rests, in turn, upon these three successive and diverse hypotheses: (1) That the acts of the judgment debtors were insufficient in form to waive their homestead rights in the land embraced by the deed; (2) that the judgment debtors were incapacitated by law to waive such rights in the land even if their acts were adequate in form to effect such purpose; and (3) that in any event it was obligatory for the Sheriff to cause a homestead to be set apart to the judgment debtors in the land in question as a condition precedent to a valid execution sale of any part of such land.

The first of these presuppositions is clearly not maintainable. A waiver is simply an intentional relinquishment of a known right. *In re Will of Yelverton,* 198 N.C. 746, 153 S.E. 319; *Aldridge v. Insurance Company,* 194 N.C. 683, 140 S.E. 706. By their previous writing and their subsequent deed, R. E. Bland and Louisa Bland expressly authorized and specifically ratified the act of the Sheriff in making the execution sale of their land without the allotment of any homestead "to the end that the land might be sold for the highest possible price and to the end that the purchaser at said execution sale would acquire a full and complete title to said land, freed from all homestead rights of said judgment debtors." They could not have chosen a more unequivocal and efficacious way of manifesting their deliberate intention to forego their homestead rights in the property in controversy.

The second and third hypotheses of the appellant on the present phase of the case necessarily arise out of the idea that the right to a homestead exemption is intended to advantage the judgment creditor. This notion is fallacious. The right is created for the benefit of the judgment debtor, and belongs to him. N. C. Const., Art. X, sec. 2; *Joyner v. Sugg,* 132 N.C. 580, 44 S.E. 122. This being so, a judgment debtor, who possesses legal competency, may waive his homestead rights in specific realty as to a particular judgment. *Cameron v. McDonald,* 216 N.C. 712, 6 S.E. 2d 497; *Pence v. Price,* 211 N.C. 707, 192 S.E. 99; *Sugg v. Pollard,* 184 N.C. 494, 115 S.E. 153; *Simmons v. McCullin,* 163 N.C. 409, 79 S.E. 625, Ann. Cas. 1915 B, 244. When a judgment debtor does that, the Sheriff may sell the land under an execution issued upon the particular judgment without causing any homestead to be set apart for the judgment debtor, and the sale is effectual against the judgment debtor and the owners of judgments docketed against the judgment debtor subsequent to the docketing of the particular judgment. *Sugg v. Pollard, supra; Simmons v. McCullin, supra.*

The second objection of appellant to the judgment is based on the contention that the execution sale and the ensuing deed are void because the Sheriff did not exhaust the personalty of the judgment debtors before taking their realty for the satisfaction of the judgment.

The execution in the case at bar conformed strictly to G.S. 1-313 (1), which prescribes that an execution against the property of a judgment debtor shall require the Sheriff "to satisfy the judgment out of his personal property, and if sufficient personal property cannot be found out of the real property belonging to him on the day when the judgment was docketed in the county, or at any time thereafter."

Divers reasons render appellant's second objection to the judgment untenable. Manifestly, the statute can apply only in case the judgment debtor owns both personal and real property. Since the stipulation of the parties as to the facts does not disclose that the judgment debtors possessed any personalty when the realty was levied upon and sold, it must be presumed that the Sheriff performed his duty and levied on the land because he could not find any personal property. *Knox v. Randall,* 24 Minn. 479; *Godman v. Boggs,* 12 Nebr. 13, 10 N.W. 403; *Vilas v. Reynolds,* 6 Wis. 214. Besides, the statutory provision that the personal property of a judgment debtor is to be exhausted before recourse is had to his realty for the satisfaction of a judgment is intended solely for the benefit of the judgment debtor. *Stancill v. Branch,* 61 N.C. 306, 93 Am. Dec. 592; *Simpson v. Hiatt,* 35 N.C. 470; *Sloan v. Stanly,* 33 N.C. 627. Consequently, nobody else can object if the Sheriff levies on and sells land without first exhausting the judgment debtor's personalty. *Whitaker v. Petway,* 26 N.C. 182; *McCoy v. Beard,* 9 N.C. 377, 11 Am. Dec. 773. Moreover, the judgment debtor waives or forfeits his right to have his personal property taken in preference to his land for the satisfaction of a judgment by requesting the Sheriff to levy upon the land in the first instance, or by failing to disclose his personal property when the Sheriff is about to make a levy. *Stancill v. Branch, supra; Sloan v. Stanly, supra.*

The third objection of appellant to the judgment is predicated upon the assumption that the execution sale and the ensuing deed are void because the Sheriff did not make his formal return to the execution or execute the deed to the purchaser at the execution sale within ninety days from the issuance of the execution.

This objection is insupportable. The sale under execution took place 24 August, 1936, and was held open for ten days for the receipt of an advanced bid in conformity to G.S. 45-28. The statutory period expired without the bid being increased, and the right of the purchaser at the execution sale to a deed from the Sheriff thereupon became absolute. *Dillingham v. Gardner,* 219 N.C. 227, 13 S.E. 2d 478; *Building & Loan*

*Assn. v. Black,* 215 N.C. 400, 2 S.E. 2d 6; *Pringle v. Loan Asso.,* 182 N.C. 316, 108 S.E. 914. Thus, the right to the deed accrued during the life of the execution, *i.e.,* within ninety days after its issuance. G.S. 1-310. This being true, the validity of the execution sale is not affected by the delay of the Sheriff in making his formal return to the execution or in executing his deed to the purchaser. *McCullen v. Durham,* 229 N.C. 418, 50 S.E. 2d 511; 33 C.J.S., Executions, sections 270 and 330. The deed has relation back to the sale and operates to pass title from that time. *Cowles v. Coffey,* 88 N.C. 340; *Dobson v. Murphy,* 18 N.C. 586.

What has been said fully sustains the conclusion of the trial court that the Sheriff's deed is valid and "conveyed the title to the lands therein described" to F. B. Bland.

The adjudication as to the ownership of the property by the defendant, F. B. Bland, is supportable upon the other ground specified by the trial court. The judgment debtors joined in the execution of the deed as "parties of the first part." In so doing, they did more than waive their homestead rights in the land embraced thereby. They also expressly conveyed such land to F. B. Bland "and his legal representatives in as full and ample manner as the said first parties are authorized and empowered to convey the same." Hence, the court below rightly concluded that the deed "would have passed title to the lands therein described independently of any acts or participation by the Sheriff under the execution sale, but subject to any existing judgment lien."

The appellant took an assignment of the judgment which was rendered in favor of the North Carolina Joint Stock Land Bank of Durham and against R. E. Bland and Louisa Bland by the Superior Court of Durham County on 2 October, 1933. This judgment was docketed in the Superior Court of Lenoir County on 11 October, 1933, and became a lien on real property in Lenoir County owned by the judgment debtors at the time of the docketing or acquired by them at any time thereafter "for ten years from the date of the rendition of the judgment." The land in controversy was never allotted to the judgment debtors as a homestead. Moreover, neither the appellant nor his assignor, the North Carolina Joint Stock Land Bank of Durham, was ever restrained from proceeding on the judgment "by an order of injunction, or other order, or by the operation of any appeal, or by a statutory prohibition." Consequently, the lien of the original judgment expired at the end of ten years from the date of its rendition, *i.e.,* on 2 October, 1943. G.S. 1-234; G.S. 1-306; *McCullen v. Durham, supra; Cheshire v. Drake,* 223 N.C. 577, 27 S.E. 2d 627; *Lupton v. Edmundson,* 220 N.C. 188, 16 S.E. 2d 840. The Legislature has decreed that an action upon a judgment shall not "have the effect to continue the lien of the original judgment." G.S. 1-47 (1). Hence, neither the action on the original judgment, which was commenced on

2 September, 1943, nor the new judgment entered in such action on 15 November, 1943, extended the lien of the original judgment beyond 2 October, 1943. The new judgment could not become a lien on any realty in Lenoir County until it was docketed on the judgment docket of the Superior Court of Lenoir County. G.S. 1-234. At that time R. E. Bland and Louisa Bland had no interest in the 29 acres.

It manifestly follows that the title acquired by the defendant, F. B. Bland, under the deed of the judgment debtors would have been freed from the lien of the original judgment on 2 October, 1943, even if the execution sale and the Sheriff's deed had been void.

Since such matter has not been mooted by the parties, we refrain from expressing any opinion as to whether the appellant ought to have proceeded by a motion in the cause rather than by this independent action. *Finance Co. v. Trust Co.,* 213 N.C. 369, 196 S.E. 340; *Weir v. Weir,* 196 N.C. 268, 145 S.E. 283.

The judgment of the court below is
Affirmed.